UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

BRADY JAMES COOPER,

    PLAINTIFF,

    Case No.:  4:23-cv-229

v.

EQUIFAX INFORMATION SERVICES,
LLC,

    *__JURY DEMAND__*

    DEFENDANT.

## COMPLAINT

Plaintiff Brady James Cooper ("Mr. Cooper" or "Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendant Equifax Information Services, LLC ("Equifax") as follows:

## PRELIMINARY STATEMENT

1.     This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA").

2.     Plaintiff is a victim of identity theft, which is one of the "fastest growing white-collar crimes in the United States. *Sloane v. Equifax Info. Services, LLC*, 510 F.3d 495, 505, 2007 WL 4535267 (4th Cir. 2007). Surveys have shown "between 1998 and 2003, approximately 27.3 million adults discovered they were victims of identity theft, with 9.91 million adults discovering they were victims in 2003 alone." *Id.*

3.     Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the

1

consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter." 15 U.S.C. § 1681(b).

4.     Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'" *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5.     On December 4, 2003, President George W. Bush signed into law the Fair and Accurate Credit Transactions Act ("FACTA").[1] This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers can better protect themselves and their families.[2]

6.     The stated purpose of FACTA is "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes."[3]

7.     In 2004, according to the Federal Bureau of Investigation, "[i]dentity theft is one of the fastest growing crimes in the U.S., claiming more than 10 million victims a year."[4]

---

[2]     https://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html Last visited March 3, 2023.

[3]     https://www.govinfo.gov/content/pkg/PLAW-108publ159/pdf/PLAW-108publ159.pdf Last visited March 3, 2023.

[4]     https://archives.fbi.gov/archives/news/stories/2004/october/preventidt_102104 Last visited March 3, 2023.

8.      Between 2000 and 2014, the Federal Trade Commission ("FTC") identified identity theft as the number one complaint made to the FTC.[5]  Identity theft complaints rose back to the top of the consumer complaint list and is once again the number one complaint received by the FTC.[6]

9.      In furtherance of its underlying purposes, the FCRA sets out requirements and obligations that consumer reporting agencies ("CRA") must follow when consumers dispute the accuracy of the information reported in their credit reports. *See* 15 U.S.C. § 1681i.

10.      The FCRA also "provides the primary recourse for victims of identity theft." Christopher P. Couch, *Forcing the Choice Between Commerce & Consumers: Application of the FCRA to Identity Theft*, 53 Ala. L. Rev. 583, 587 (2002).

11.      Equifax is one of America's three nationwide CRAs.

12.      The FCRA demands of Equifax that it utilize reasonable procedures to assure the maximum possible accuracy of the information they report. 15 U.S.C. § 1681e(b).

13.      Accordingly, Equifax must have and follow reasonable procedures designed to ensure the maximum possible accuracy of the information for each consumer report prepared by it.

14.      Equifax cannot simply parrot the information it receives from furnishers, particularly after a consumer makes a dispute to Equifax about an item of information in the consumer's file, as that term is defined by 15 U.S.C. § 1681a(g).

---

[5]      https://www.ftc.gov/news-events/press-releases/2016/03/ftc-releases-annual-summary-consumer-complaints Last visited March 3, 2023.

[6]      https://www.ftc.gov/reports/consumer-sentinel-network-data-book-2020 Last visited March 3, 2023.

15.    When a consumer, like Plaintiff, disputes the accuracy of information to Equifax and the defendant chooses not to delete the disputed item of information, then Equifax must perform a reasonable "reinvestigation" of the consumer's dispute and notify the furnisher (*e.g.*, the source of the disputed information) of the consumer's dispute.

16.    The FCRA requires Equifax to conduct a reasonable reinvestigation of a consumer's dispute, which is an independent duty of the furnisher's FCRA investigation duties.

17.    Here, Plaintiff brings claims under Section 1681e(b) against Equifax because it reported inaccurate information about Plaintiff concerning: an auto loan opened by an impostor; inquiries made without Plaintiff's authorization, knowledge or consent; and addresses in Michigan that do not belong to Plaintiff (hereinafter, the "inaccurate information").

18.    When Plaintiff disputed the inaccurate information to Equifax, said defendant did not delete or reasonably reinvestigate the inaccurate information in violation of Section 1681i.

19.    According to the Consumer Financial Protection Bureau, "experience indicates that [CRAs] lack incentives and under-invest in accuracy." Consumer Fin. Prot. Bureau, *Supervisory Highlights Consumer Reporting Special Edition 21* (Issue 14, March 2, 2017).

20.    This is particularly true as to how Equifax with its now 50-year-old obligation to conduct a meaningful accuracy reinvestigation.

21.    Equifax has repeatedly been sued by consumers, sanctioned by regulators and reprimanded by both District and Appellate courts to do more than an automated parroting of what its business customers (the furnishers) respond to Equifax in response to disputes.

22.    Had Equifax followed that advice and heeded those warnings, then it would not have credit reported the inaccurate information and caused harm to Plaintiff in this case.

## JURISDICTION & VENUE

23.    This Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C § 1331.

24.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) as the events described below occurred in this Judicial District.

## PARTIES

25.     Plaintiff is an adult individual and resides in this judicial district.  Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

26.     Defendant Equifax is a limited liability company with its principal place of business located at 1550 Peachtree St NW, Atlanta, GA 30309.  Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f).  Equifax is regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d) to third parties.  Equifax disburses such consumer reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

### *Sections 1681e(b) and 1681i(a) of The Fair Credit Reporting Act Require Substantive Investigations and Prohibit Mere "Parroting" of Furnishers' Responses to Disputes*

27.     "Congress enacted FCRA in 1970 out of concerns about abuses in the consumer reporting industry. *See* S. Rep. No. 91–517, at 3 (1969); 116 Cong. Rec. 35941 (1970) (statement of Sen. Proxmire); *Id.* at 36570 (statement of Rep. Sullivan).

28.     In enacting the FCRA, Congress adopted a variety of measures designed to ensure that [CRAs] report accurate information."  *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001).

29.     "In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth . . . in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and

1681i(a)(3)(A)." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4. (E.D. Va. Mar. 18, 2011).

30.    Section 1681e(b) sets forth Equifax's overall du[t]y:

Accuracy of report. Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates.

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

31.    Section 1681i(a), on the other hand requires much more from Equifax after receipt of notice of dispute of any item of information from a consumer:

[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency of the directly… of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file … before the end of the 30-day period[.]

15 U.S.C. § 1681i(a)(1)(A).

32.    Section § 1681i(a) imposes on Equifax "a duty . . . to make reasonable efforts to investigate and correct inaccurate or incomplete information brought to its attention by the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1160 (11th Cir. 1991). "[T]he term 'investigation' is defined as '[a] detailed inquiry or systematic examination' or 'a searching inquiry.'" *Hinkle v. Midland Credit Mgmt., Inc.*, 827 F.3d 1295, 1303 (11th Cir. 2016) (citations omitted).

33.    Equifax does not fulfill the FCRA's "grave responsibility" to conduct a reinvestigation of a consumer's dispute by merely contacting the creditor who supplied the dispute item. *See Pinner v. Schmidt,* 805 F.2d 1258, 1262 (5th Cir.1986) (concluding it was unreasonable for a credit reporting agency to contact only the creditor in its reinvestigation of a disputed

debt); *Collins v. Experian Info. Sols., Inc.*, 775 F.3d 1330, 1333 (11th Cir. 2015), *on reh'g sub nom. Collins v. Equable Ascent Fin., LLC*, 781 F.3d 1270 (11th Cir. 2015); *Carlisle v. Nat'l Commercial Servs., Inc.*, No. 1:14-cv-515-TWT-LTW, 2016 WL 4544368, at *9 (N.D. Ga. July 22, 2016), *Report & Recommendation adopted,* No. 1:14-cv-515-TWT, 2016 WL 4532219 (N.D. Ga. Aug. 29, 2016) ("[A] reasonable factfinder could find that merely contacting [the creditor] was not sufficient to determine whether the disputed information was inaccurate.").

34.     To the contrary, the "grave responsibility" imposed by the FCRA "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

35.     As the Fourth Circuit explained in *Johnson v. MBNA*:

> The key term at issue here, investigation, is defined as [a] detailed inquiry or systematic examination. Am. Heritage Dictionary 920 (4th ed.2000); see Webster's Third New Int'l Dictionary 1189 (1981) (defining investigation as a searching inquiry).

357 F.3d 426, 430 (4th Cir. 2004) (internal quotations omitted).

36.     Further, although the term "investigation" is not used in § 1681e(b), the CRAs have a duty to conduct a reasonable initial investigation pursuant to § 1681e(b) as well as § 1681i(a) and that this is "central" to the CRAs' duties of care under that portion of the Act:

> This conclusion flows from the plain meaning of both [§1681e(b) and §1681i(a)]. For example, Section 1681e(b) requires (1) "reasonable procedures" that (2) "assure" (3) "maximum possible accuracy." To "assure" means "to make sure or certain: put beyond all doubt." *Webster's Third New International Dictionary* 133 (1993). "Maximum" means the "greatest in quantity or highest degree attainable" and "possible" means something "falling within the bounds of what may be done, occur or be conceived . . .." *Id.* at 1396, 1771. It is difficult to imagine how "maximum possible accuracy" could be guaranteed without an adequate investigation. Likewise, Section 1681i(a)(1)(A) requires a "reinvestigation," necessarily implying that an "investigation" was required to have been performed in the first instance.

*Burke*, 2011 WL 1085874, at *4.

37.     Indeed:

[W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Federal Trade Commission, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT

(July 2011), at 67.[7]

38.     Equifax has been sued thousands of times wherein an allegation was made that it

violated the FCRA.

39.     Equifax is sued, at a minimum, hundreds of times per year wherein an allegation is

made that Equifax included items of information in a consumer's file due to identity theft and

continued to report fraudulent information after receipt of a consumer's dispute.

40.     Equifax has been ordered in single plaintiff FCRA lawsuits to produce discovery

responses on the number of times it has been sued, including cases filed by the undersigned,

because, *inter alia*, "[e]vidence that a defendant has repeatedly engaged in prohibited conduct

while knowing or suspecting that it was unlawful would provide relevant support for an argument

that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257

F.3d 409, 418 (4th Cir. 2001) (noting that whether "other consumers have lodged complaints

similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

---

[7] Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–
fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.   Last
visited March 3, 2023.

41.     Notwithstanding and despite Plaintiff's exhaustive efforts to date, Equifax deliberately, willfully, intentionally, recklessly and negligently repeatedly failed to perform reasonable reinvestigations of Plaintiff's disputes and as required by the FCRA.

### *Plaintiff is a Victim of Identity Theft*

42.     Plaintiff is a victim of identity theft.

43.     In or around 2021, an impostor applied for accounts with AT&T, Capital One, Credit Acceptance Corp., Verizon and Wells Fargo Dealer Services.

44.     In connection with the fraudulent applications for credit, Equifax generated and sold Plaintiff's consumer report to the potential creditors listed in the preceding paragraph.

45.     At least one of the fraudulent applications for credit was approved and an auto loan was opened with Credit Acceptance Corporation. Equifax reported the account as 30, 60, 90, 120, 150, 180 days past due and with a past due balance of over $ 7,000.

46.     Upon information and belief, some of the personal identifying information used in connection with the applications for credit purportedly concerned Plaintiff.

47.     Plaintiff did not apply for or authorize someone on his behalf to apply for credit with the creditors identified above.

48.      Plaintiff did not receive any goods, benefits or services from any of the persons listed above in connection with the inquiries or the fraudulent account opened with Credit Acceptance Corporation.

49.     Plaintiff reported the identity theft of his identity to law enforcement agencies, including the Grand Prairie Police Department and the Federal Trade Commission.

### *Plaintiff's Experience with Equifax*

50.     Between 2021 and 2022, Mr. Cooper disputed the inaccurate information to Equifax no less than five times.

51.     Mr. Cooper provided Equifax with sufficient information and documents in support of his disputes, and at a minimum which Equifax should have concluded that it could not verify the inaccurate information belonged to Plaintiff.

52.     After receipt of one of Plaintiff's disputes, Equifax purportedly deleted two addresses due to fraud.

53.     However, Equifax did not delete or reinvestigate all the disputed items of information.

54.     For example, when Plaintiff disputed the unauthorized hard and soft inquiries to Equifax, Equifax misrepresented to Mr. Cooper that it did not have to delete or reinvestigate disputed inquiries.

55.     Equifax refused to reinvestigate or delete the no less than three (3) different hard inquiries (disputed items of information in his Equifax file) after receipt of Plaintiff's disputes.

56.     Instead, and in response to Plaintiff's disputes, Equifax stated to Plaintiff:

Inquiries are a factual record of file access. Should you have reason to believe this inquiry was unauthorized, Please (*sic*) contact the creditor directly and follow their internal fraud procedures.

57.     Equifax has been on notice prior to this lawsuit of its duty to reinvestigate or delete disputed hard inquiries:

More than simply comporting with the plain language of the statute, [requiring reinvestigation of inquiry disputes] best serves to advance the purpose of FCRA's reinvestigation requirements—ensuring the accuracy of the information used by creditors to determine a consumer's creditworthiness. As the Eleventh Circuit has noted, the standard of accuracy imposed by the FCRA "should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors in fair and accurate credit reporting. *Cahlin v. Gen. Motors Acceptance Corp.*, 936

> F.2d 1151, 1158 (11th Cir. 1991).  The interests of consumers and potential
> creditors are best served by deletion of hard inquiries that Equifax itself admits
> misstate[ ] the consumer's credit history.  Consumer's credit scores are negatively
> impacted by fraudulent or inaccurate credit inquiries, and creditors are provided
> with an inaccurate portrait of the consumer's credit history.  The only entity that
> benefits is Equifax, which does not have to expend resources reinvestigating
> disputed credit inquiries.

*Steed v. Equifax Information Services, LLC*, No. 1:14-cv-0437-SCJ, 2016 WL 7888039, at *4

(N.D. Ga. Aug. 31, 2016). (internal quotations omitted).

58.    Thus, if Equifax's failure to reinvestigate the inquiries was based on a policy or

procedure, then such flawed procedure may be viewed as a willful violation of the FCRA. *See*

*Younger v. Experian* 2017 WL 5465527, *9 (N.D. Ala. Sep. 22, 2017).

59.    Notwithstanding, Equifax prepared and issued consumer reports concerning

Plaintiff to third parties that included the inaccurate information.

60.    Equifax did not delete or reinvestigate all the disputed items of information.

61.    Alternatively, Equifax failed to consider all relevant information and perform a

reasonable reinvestigation of the disputed items of information.

62.    Plaintiff requested Equifax to provide Plaintiff with Plaintiff's file.

63.    On at least one occasion, Equifax failed to provide Plaintiff with Plaintiff's file.

64.    Plaintiff requested Equifax to provide Plaintiff with Plaintiff's file due to fraud.

65.    On at least one occasion, Equifax failed to provide Plaintiff with Plaintiff's file in

response to Plaintiff's request.

66.    Plaintiff requested Equifax to provide Plaintiff with Plaintiff's file due to fraud and

supplied Equifax with a copy of an identity theft report.

67.    On at least one occasion, Equifax failed to provide Plaintiff with Plaintiff's file in

response to Plaintiff's request.

68.     Equifax did not review all relevant information provided by Plaintiff related to the disputed information.

69.     Plaintiff provided Equifax with a copy of an Identity Theft Report made to the Federal Trade Commission in support of his dispute of the inaccurate information.

70.     Equifax refused to block the inaccurate information after receipt of an identity theft report.

71.     Plaintiff provided Equifax with a copy of a notarized fraud affidavit made to the Grand Prairie Police Department in support of his dispute of the inaccurate information.

72.     Upon information and belief, Equifax did not contact the Grand Prairie Police Department to validate or otherwise invalidate his fraud claim.

73.     Equifax also did not review underlying account documents for the fraudulent account in Plaintiff's file or the subject of his disputes, or both, such as the applications for credit and the personal identifying information concerning the inaccurate information.

74.     Plaintiff provided Equifax with handwriting exemplars. However, Equifax did not conduct any handwriting analysis on Plaintiff's signature or any of the signatures related to the inaccurate information.

75.     Plaintiff provided Equifax with copies of his driver's license.

76.     Equifax did not compare Plaintiff's driver's license with any driver's used in connection with the inaccurate information.

77.     Equifax did not make a reasonable inquiry into the disputed information.

78.     Equifax did not make any effort to contact law enforcement, including but not limited to the Federal Trade Commission or Grand Prairie Police Department.

79.     Equifax failed to modify or delete all the inaccurate information.

80.     At best, Equifax verified the false information by confirming some of Plaintiff's personal identifying information with some of the personal identifying information reported by the data furnishers who supplied the inaccurate information.

81.     As a result of Equifax's violative and distinct conduct, Plaintiff suffered adverse credit action, lost credit opportunities, lower credit score, loss of time, out-of-pocket expenses, and emotional distress.

### COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b)

82.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

83.     Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff' credit reports and credit files they published and maintained concerning Plaintiff when they reported the inaccurate account information.

84.     As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages.

85.     Equifax's conduct, actions, and inactions were willful, rendering each liable for punitive damages pursuant to 15 U.S.C. § 1681n.  In the alternative, Equifax was negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

86.     Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax pursuant to 15 U.S.C. § 1681n and § 1681o, and in an amount to be determined by the jury.

### COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

**15 U.S.C. § 1681i(a)**

87.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

88.    Equifax violated 15 U.S.C. § 1681i(a)(1) by failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the status of the disputed information or delete the item from each of Plaintiff's credit files.

89.    Upon information and belief, Equifax violated 15 U.S.C. § 1681i(a)(2) by its conduct, which includes, but is not limited to, failing to send to the furnisher all relevant information that it received with Plaintiff's disputes. Had Equifax sent Credit Acceptance Corporation and the companies who requested Plaintiff's consume report or credit information, then they would or should have notified Equifax to delete the inaccurate information.

90.    Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

91.    Equifax violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate information from Plaintiff' credit files or modify the item of information upon the completion of a lawful reinvestigation.

92.    As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered harm, described more fully above, for which Plaintiff seeks actual damages.

93.    Equifax's conduct, actions, and inactions were willful, rendering it liable for punitive damages pursuant to 15 U.S.C. § 1681n.  In the alternative, Equifax was negligent, entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

94.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax pursuant to 15 U.S.C. § 1681n and § 1681o, and in an amount to be determined by the jury.

### COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681g

95.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

96.    Equifax violated 15 U.S.C. § 1681g(a)(1) by failing to disclose all information that it maintained on Plaintiff's file after receipt of his request for his file.

97.    Equifax violated 15 U.S.C. § 1681g(a)(2) by failing to disclose all sources of information maintained in Plaintiff's file after receipt of Mr. Cooper's request.

98.    Equifax violated 15 U.S.C. § 1681g(a)(3) by failing to identify each person that procured Plaintiff's consumer report within the prior one or two years, as applicable, and after receipt of Mr. Cooper's request.

99.    Equifax's conduct, actions, and inactions were willful, rendering it liable for punitive damages pursuant to 15 U.S.C. § 1681n.  In the alternative, Equifax was negligent, entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

100.    As a result of Equifax's violations, Plaintiff suffered actual damages including confusion, lack of information, frustration, the inability to determine the sources of the items of information on his file, the inability to determine the identities of each person who procured his file, as well as lost time.

101.    Equifax's failure to disclose all information in its possession related to Plaintiff, the source of this information, and the identities of each person that procured the information

maintained in its database about Plaintiff was an act or omission committed in violation of the rights conferred to Plaintiff by Congress as set forth by 15 U.S.C. § 1681g.

102.    As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual damages.

103.    Equifax's conduct, actions, and inactions were willful, rendering it liable for punitive damages pursuant to 15 U.S.C. § 1681n.  In the alternative, Equifax was negligent, entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

104.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax pursuant to 15 U.S.C. § 1681n and § 1681o, and in an amount to be determined by the jury.

### COUNT FOUR – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681c-2

105.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

106.    Plaintiff provided Equifax with proof of his identity.

107.    Plaintiff provided Equifax with a copy of an identity theft report.

108.    In his disputes, Plaintiff identified the items of information that appeared in his Equifax file due to identity theft.

109.    Equifax violated 15 U.S.C. § 1681c-2(a) by failing to timely block the disputed items of information.

110.    Equifax violated, upon information and belief, 15 U.S.C. § 1681c-2(b) when it failed to notify the furnisher of the disputed items of information may be the result of identity theft,

that an identity theft report has been filed, that a block has been requested, or the effective dates of the block.

111.    Equifax violated 15 U.S.C. § 1681c-2(c)(2) when it failed to timely notify Plaintiff of its decision to decline to block the disputed items of information.

112.    As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive, and statutory damages.

113.    Equifax's conduct, actions, and inactions were willful, rendering it liable for punitive damages pursuant to 15 U.S.C. § 1681n.  In the alternative, Equifax was negligent, entitling Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

114.    Plaintiff is entitled to recover actual damages, statutory damages, punitive damages, costs and attorney's fees from Equifax pursuant to 15 U.S.C. § 1681n and § 1681o, and in an amount to be determined by the jury.

**JURY DEMAND**

115.    Plaintiff requests a jury trial on all claims.

**PRAYER**

Wherefore, Plaintiff prays for judgment against Defendant as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Third Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

On the Fourth Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

DATED:        <u>March 3, 2023</u>.


Respectfully submitted,

*<u>/s/ Micah S. Adkins</u>*
Micah S. Adkins
TX BAR NO. 24088777
**THE ADKINS FIRM, P.C.**
One Lincoln Centre
5400 LBJ Fwy., Suite 1200
Dallas, Texas 75240
(214) 974.4030 Telephone
MicahAdkins@ItsYourCreditReport.com
*COUNSEL FOR PLAINTIFF*
*BRADY JAMES COOPER*